# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52879-7-II |
| Respondent, | |
| v. | |
| LISA JEAN HURDE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Lisa Jean Hurde appeals her conviction for possession of a controlled substance, methamphetamine, with intent to deliver.[1]  She argues that the trial court erred in admitting her statements.  We affirm Hurde's conviction.

## FACTS[2]

Hurde was an inmate at the Clallam County Corrections Facility.  Corrections deputies decided to search Hurde for controlled substances.  Deputy Steve Brooks retrieved Hurde from her cell and asked her if she had anything that she was not supposed to have.  Hurde responded, "like a pencil."  Report of Proceedings (RP) at 42.  Brooks clarified he was thinking of drugs.  Hurde denied having any drugs on her person.

---

[1] Hurde also pled guilty to possession of a controlled substance by a prisoner; however, that conviction is not contested in this appeal.

[2] The following facts rely in part on the trial court's CrR 3.5 findings of fact, which, with the exception of finding of fact 8, are unchallenged and therefore verities on appeal.  *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Brooks then informed Hurde he was taking her to be strip searched by Deputy Melissa Clark. Sergeant Darrell Bryant, who was with Brooks and Clark, told Hurde that "it would be better for her if she gave it to us" and that she was going to be strip searched. RP at 73. Hurde said she had already been strip searched. Bryant told her they were going to do it again. At that point Hurde said she had "something on her." RP at 73.

Hurde and Clark then went into a private area to conduct the search. Clark told Hurde she had been asked to do an unclothed body search. Clark instructed Hurde to "remove her garments and . . . hand them to [her] as she took them off." RP at 93. Clark advised she would then search each piece of clothing and set it aside. After informing Hurde of the procedures to be employed, Hurde removed a small blue container from her bra and handed it to Clark. While taking this action, Hurde stated that, "she didn't know what to do with it when she brought it in. That she wasn't using. Um, that she had given it to the girls in the tank, that they were the ones using it." RP at 94. Clark then continued the unclothed search of Hurde.

The State charged Hurde with possession of methamphetamine with intent to deliver and possession of a controlled substance by a prisoner. Hurde pled guilty to the latter charge and waived her right to a jury trial on the former charge.

The court held a confession hearing pursuant to CrR 3.5. Hurde argued her statements were not made knowingly, intelligently, and voluntarily.

The court held the confession hearing concurrent with Hurde's bench trial. Hurde testified that Clark did not ask her any questions. Hurde "just started telling her . . . what happened." RP at 119. Relevant to this appeal, the court entered written findings and found that, "[t]he statements Hurde made to Deputy Clark were spontaneous, unprompted and not in response to any questions

from law enforcement." Clerk's Papers (CP) at 48 (Finding of Fact (FF) 8).[3] At no point did Clark, Brooks, or Bryant read Hurde her *Miranda*[4] rights. No officer used force, threats, or intimidation to obtain these statements from Hurde.[5]

The court then concluded that the statements "were made spontaneously and . . . not in response to any questions or coercive tactics on the part of Deputy Clark" and that the statements "were made knowingly, intelligently and voluntarily, and were not the product of coercion, threats, or promises." CP at 48-49 (Conclusion of Law 1-2)

The court found Hurde guilty. Hurde appeals.

ANALYSIS

Hurde contends the trial court should have suppressed her statements to Clark regarding giving methamphetamine to other inmates because the statements were a product of custodial interrogation made before she was read *Miranda* warnings.[6] We disagree.

I.    STANDARD OF REVIEW

We review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Unchallenged findings are verities on appeal, and challenged findings supported by substantial evidence are binding. *O'Neill*, 148 Wn.2d at 571. We review the trial court's conclusions of law following a

---

[3] In its bench trial findings of fact and conclusions of law, the court only relied on Hurde's statements to Clark to find guilt.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] In its bench trial findings of fact and conclusions of law, in addition to Hurde's verbal statements to Clark, the court relied on Hurde's testimonial act of pulling the blue container from her bra and handing it to Clark. *See State v. Wethered*, 110 Wn.2d 466, 470-71, 755 P.2d 797 (1988).

[6] Hurde does not assign error to any issues regarding statements she made to officers other than Clark.

suppression hearing de novo. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We affirm conclusions of law that are supported by the findings of fact. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

II.     LEGAL PRINCIPLES

"*Miranda* warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). When these conditions are present, but *Miranda* warnings are not given, we presume that the suspect's self-incriminating statements are involuntary and that the statements must be suppressed. *Heritage*, 152 Wn.2d at 214.

*Miranda* does not apply to statements that are made outside the context of a custodial interrogation. *State v. Sadler*, 147 Wn. App. 97, 131, 193 P.3d 1108 (2008). A custodial interrogation includes express questioning and any actions or words on the part of the police that are reasonably likely to elicit an incriminating response from the suspect. *State v. Wilson*, 144 Wn. App. 166, 184, 181 P.3d 887 (2008). A suspect's voluntary, spontaneous, and unsolicited statements are not the product of a custodial interrogation. *State v. Ortiz*, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985).

An inmate's constitutional rights are limited due to the need to protect institutional goals and policies. *State v. Rainford*, 86 Wn. App. 431, 436, 936 P.2d 1210 (1997). These limitations include strip searches of inmates if there is a reasonable suspicion that it is necessary to discover weapons or drugs concealed on the inmate. *State v. Barron*, 170 Wn. App. 742, 752, 285 P.3d 231 (2012).

III.    ADMISSION OF STATEMENTS

Here, Hurde challenges finding of fact 8, where the court found, "The statements Hurde made to Deputy Clark were spontaneous, unprompted and not in response to any questions from law enforcement." CP at 48. Hurde also challenges the court's conclusions of law 1 and 2 that the statements "were made spontaneously and . . . not in response to any questions or coercive tactics on the part of Deputy Clark" and that the statements "were made knowingly, intelligently and voluntarily, and were not the product of coercion, threats, or promises." CP at 48-49.

The record shows while walking to a search area to conduct a lawful search Brooks asked Hurde if she had any controlled substances, and Hurde said she did not. When it was explained that she was going to be searched, Hurde admitted she had "something on her." RP at 73. Neither Brooks nor any other officer ever questioned Hurde about whether she was distributing controlled substances.

Hurde and Clark then went into a private area to conduct the search. Clark informed Hurde of the procedures she would use to perform the unclothed body search. Before the search began, Hurde handed Clark a small container containing methamphetamine and blurted out that she did not use methamphetamine, but instead she "had given it to the girls in the tank." RP at 94. Clark did not ask Hurde any questions. Additionally, Clark did not use any force, threats, or intimidation to obtain these statements from Hurde.

Substantial evidence supports the court's finding that Hurde's statements to Clark regarding distributing methamphetamine "were spontaneous, unprompted and not in response to any questions from law enforcement." CP at 48 (FF 8). A suspect's voluntary, spontaneous, and unsolicited statements are not the product of a custodial interrogation. *Ortiz*, 104 Wn.2d at 484. Thus, *Miranda* warnings were not required.

5

The findings of fact support the trial court's conclusion that Hurde's statements were spontaneous and made knowingly, intelligently, and voluntarily. Thus, the trial court did not err in admitting Hurde's statements.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Cruser, J.